UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MT. HAWLEY INSURANCE COMPANY, | ) | CASE NO. 1:06CV2569 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | JUDGE ANN ALDRICH |
| | ) | |
| | ) | |
| PACKERS SANITATION SERVICES, | ) | |
| INC., LTD., et al., | ) | |
| | ) | |
| Defendants. | ) | MEMORANDUM OF OPINION |

On October, 24, 2006, Mt. Hawley Insurance Company ("Mt. Hawley") filed a complaint in the Northern District of Ohio, Eastern Division, seeking a declaratory judgment that it had no duty to defend or indemnify Packers Sanitation Services, Inc. Ltd. ("Packers") against any claims arising from a December 20, 2003 fire at the Postville, Iowa manufacturing and processing facilities of Iowa Turkey Products, Inc. ("Iowa Turkey"). In its complaint, Mt. Hawley also named Iowa Turkey's insurer, Regent Insurance Company ("Regent") as a defendant, noting that Regent had filed a subrogation lawsuit against Packers regarding responsibility for the fire's damages. Mt. Hawley contends that its indemnification agreement with Packers includes notice requirements that are conditions precedent to coverage, and it alleges that in failing to meet these notice requirements as they relate to the December 20, 2003 fire, Packers released Mt. Hawley from its duty to defend or indemnify Packers from any claims arising from this event. (Doc. No. 1).

On November 16, 2006, Packers filed a counterclaim against Mt. Hawley, seeking a declaratory judgment that the indemnification agreement with Mt. Hawley does, in fact, cover any claims arising from the December, 20, 2003 fire. (Doc. No. 7, 10).

On November 21, 2006, Regent filed a motion to dismiss for lack of subject matter jurisdiction under 28 U.S.C. § 1332, and argued, in the alternative, that this court should either dismiss or transfer this case under the common law doctrine of *forum non conveniens*, or abstain under 28 U.S.C. § 2201(a) and applying the *Colorado River* Abstention Doctrine. (Doc. No. 12). Mt. Hawley filed a brief in opposition on December 7, 2006. (Doc. No. 15). Regent responded on February 2, 2007. (Doc. No. 17).

All of the issues have been fully briefed and are ripe for adjudication. For the following reasons, Regent's motion to dismiss is denied.

## I. FACTUAL BACKGROUND

Mt. Hawley, an Illinois corporation, is a liability insurer for Packers, an Ohio limited liability company. The $1 million indemnification policy that Mt. Hawley issued to Packers requires that Packers, "as soon as is practicable," provide Mt. Hawley with notice of "an 'occurrence' or offence which may result in a claim." The policy also requires Packers to make an immediate record of any specific information relating to a potential claim. Notice regarding a potential claim must be submitted in writing.

Mt. Hawley asserts that these notice requirements are conditions precedent to coverage for any claim under the policy, and it alleges that Packers failed to meet these conditions precedent with respect to its role in the December 20, 2003 fire at the Postville, Iowa manufacturing and processing plant belonging to Packers' client, Iowa Turkey. Mt. Hawley further alleges that Packers' failure to comply with the policy's notice requirements is to Mt. Hawley's prejudice in any suit regarding claims arising from the fire. Packers insists that it met all conditions precedent to coverage for the fire under its policy

with Mt. Hawley, and it argues that failing to meet these conditions would not prejudice Mt. Hawley.

Underlying this dispute is a subrogation suit pending in the United States District Court for the Southern District of Iowa. In the Iowa suit, Regent, a Wisconsin-based insurer, alleges that Packers is responsible for the damages from the fire because Packers breached its contract with Iowa Turkey by failing to take contractually mandated safety precautions and by failing to instruct or supervise its employees properly. Regent, which provided insurance coverage for the Iowa Turkey plant, argues that as result of this particular breach and the negligence behind it, Packers should subrogate the over $8 million that Regent has paid to Iowa Turkey in compensation for the damages from the fire.

In light of its potential obligation to indemnify Packers from a portion of the damages, Mt. Hawley seeks a declaratory judgment.

## II. DISCUSSION

### A. Subject Matter Jurisdiction

Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction fall into two general categories: facial attacks and factual attacks. Fed.R.Civ.P. 12(b)(1); *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). A facial attack challenges the pleading itself. On such an attack, the court must take all material allegations in the complaint as true, and construe them in the light most favorable to the nonmoving party. *Id.* (citing *Scheuer v. Rhodes*, 416 U.S. 232, 235-37 (1974)). A factual attack, by contrast, challenges the factual existence of subject matter jurisdiction. "On such a motion, no presumptive truthfulness applies to the factual allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* (internal citations omitted). In reviewing such motions, a district court has wide discretion to allow affidavits and documents, and even

to conduct a limited evidentiary hearing if necessary. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).

In the instant case, Regent's 12(b)(1) motion makes a facial attack on this court's subject matter jurisdiction, arguing that Mt. Hawley's request for declaratory relief does not satisfy the amount in controversy requirement of 28 U.S.C. § 1332 because of the "non-monetary" nature of declaratory relief itself. (Doc. No. 12); *see* 28 U.S.C. § 1332 (2006). Regent argues that what is won in a declaratory judgment action is the declaration alone, despite any subsequent financial effects. The court disagrees. Regent neither acknowledges nor challenges the factual basis of either Packers' $8 million potential liability for the fire nor Mt. Hawley's $1 million dollar indemnity agreement with Packers. Both of these combine to suggest that the economic consequences of the declaratory judgment sought by Mt. Hawley are well in excess of 28 U.S.C. § 1332's amount in controversy requirement.

With regard to injunctions and declaratory judgments, "[i]t is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977). Thus, when a declaratory judgment is sought to recognize or protect a right that has an ascertainable value, that value is the amount in controversy. *See id.* It follows, therefore, that non-monetary relief, including a declaration clarifying the legal relationship of parties to an indemnification agreement, should be considered in terms of its likely and determinable economic consequences for the purposes of calculating whether that relief meets the statutory amount in controversy requirement for diversity jurisdiction. *See LoDal, Inc. v. Home Ins. Co.*, No. 95-2187, 1998 U.S. App. LEXIS 12841 at *6 (6th Cir. June 12, 1998) (quoting *Beacon Constr. Co. v. Matco Elec. Co.*, 521 F.2d 392, 399 (2d Cir. 1975) ("'the amount in controversy is not necessarily the money

judgment sought or recovered, but rather the value of the consequences which may result from the litigation.'")).

Here, the object of the litigation is clear, as are the economic consequences of the right that the parties seek to protect. Mt. Hawley seeks a declaration that it has no duty to defend or indemnify Packers for Packers' alleged role in the December 20, 2003 fire at the Iowa Turkey plant. The value of this object can be measured by the value of the coverage that Mt. Hawley would be obligated to provide Packers per their indemnification agreement. That coverage is valued at $1 million, a figure that well surpasses 28 U.S.C. § 1332's $75,000 amount in controversy requirement, ensuring that subject matter jurisdiction is appropriate in this action between diverse parties.

Regent's suggestion that the object of the litigation should be considered from the point of view of the plaintiff is without merit here. Both sides risk a loss of $1 million, either in the form of an insurance pay-out, or in the form of a loss of insurance coverage. Thus, choosing the plaintiff or the defendant's point of view will not affect how the amount in controversy is determined, and choosing the plaintiff's point of view in particular will not reduce the amount in controversy to a nullity.

Regent further contends that this request for declaratory judgment lacks "certain" and "sufficiently measurable" monetary value. The court disagrees. This assertion ignores the fact that the value of the declaratory relief that Mt. Hawley has requested is set by the $1 million indemnification. The only uncertainty or impediment to calculating the amount in controversy that Regent can cite is the still pending outcome of its subrogation suit with Packers. The Supreme Court, however, has held that in declaratory judgment actions, courts should look to a plaintiff's potential future losses for purposes of determining whether the amount in controversy requirement is met. *Hunt*, 432 U.S. at 347.

Here, it makes no difference that the underlying subrogation suit remains unsettled and the economic burden that it may create is threatened rather than actual; it is enough that the court can reasonably determine what Mt. Hawley stands to loose, should Packers be found liable for the $8 million in damages. That amount is the $1 million established by the indemnification agreement, which is well in excess of the amount in controversy requirement for diversity jurisdiction. Accordingly, Regent's 12(b)(1) motion is denied.

**B.** *Forum Non Conveniens*

The doctrine of *forum non conveniens* provides courts with the discretion to dismiss actions that would be more appropriately litigated in another forum, despite the fact that venue and jurisdiction are technically proper. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 504-07 (1947). A plaintiff's choice of forum should rarely be disturbed, and the court may dismiss a case under *forum non conveniens* only if the balance of considerations tips strongly in favor of the alternative forum. *Gilbert*, 330 U.S. at 508. Courts may not refuse to dismiss a case, however, simply because the alternative forum has law, choice of law rules, or procedures less favorable to the plaintiff than those found in American courts. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 247-55 (1981).

Regent invokes the common law doctrine of *forum non conveniens* to dismiss this case. Since the enactment of 28 U.S.C. § 1404(a), however, the doctrine of *forum non conveniens* has continuing application only when the alternative forum is outside the United States. *Am. Dredging Co. v. Miller,* 510 U.S. 443, 449 n.2 (1994). Here, there is no such forum. Indeed, this case does not involve matters outside the United States. Therefore, the doctrine of *forum non conveniens* does not apply. Accordingly, Regent's motion to dismiss on the basis of the doctrine of *forum non conveniens* is denied.

**C. Motion to Transfer**

In the alternative, Regent requests that this case be transferred to another court pursuant to 28 U.S.C. § 1404(a). The court finds, however, that Regent has not met its burden of demonstrating that transfer is appropriate.

Title 28 U.S.C. § 1404(a) provides that, "For the convenience of parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). District courts have wide discretion in deciding motions to transfer. *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). According to the Sixth Circuit, "in ruling on a motion to transfer under section 1404(a), a district court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'" *Moses v. Business Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991) (citing *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 30 (1988)). The party requesting a transfer bears the burden of proof to show that these factors weigh "strongly" in favor of transfer. *Bacik v. Peek,* 888 F.Supp. 1405, 1414 (N.D. Ohio 1993). The court, however, is to afford little deference to the plaintiff's choice of forum when these factors strongly support transfer of venue. *See Gilbert*, 330 U.S. at 508.

The threshold question for transfer is whether the action "might have been brought" in the proposed transferee district. *Cont'l Grain Co. v. Barge F.B.L.-585,* 364 U.S. 19, 80 (1960). A transferee court may receive a case if (1) it has subject matter jurisdiction; (2) venue is proper; and (3) the defendant is amenable to process its issues. *1 Moore's Federal Practice*, para. 0.145[6.1] at 1636 (2d ed. 1982).

The Southern District of Iowa satisfies each of these three criteria. The parties maintain diversity there, as each of them is a citizen from different state. A transaction or occurrence that gave rise to the complaint – the December 20, 2003 fire at the Iowa Turkey plant–took place within this district as well. Both defendants also have sufficient contact with the district for residence there pursuant to 28 U.S.C. 1391(c). Therefore, both defendants are amenable to process within the district.

Next, the court must evaluate how transferring the case to a new district will affect the convenience of the litigation for all interested parties. Regent has shown that the Southern District of Iowa is *as convenient* a forum as the Northern District of Ohio, but it has not shown that the Southern District of Iowa is a *more convenient* forum. Because Regent fails to carry its burden in demonstrating that transfer will be for the convenience of the parties, its motion is denied.

Regent's argument for the Iowa forum hinges on its assertion that the majority of witnesses relevant to this matter are located there. This assertion, however, rings hollow. At issue is not Packers' possible liability for the December 20, 2003 fire that took place in the Southern District of Iowa, but rather Packers' possible failure to satisfy the notice requirements of an indemnification agreement governed by Ohio law and issued to it at Packers' Ohio headquarters. The court, therefore, is unpersuaded by Regent's assertion that most of the depositions necessary for the litigation are likely to be taken in Iowa.

It is noteworthy that dates and times regarding notice can be easily established via documents. Indeed, access to the agreement and to other documents may be the most important evidentiary concern in this case. Generally, documents are hardly grounds for changing the forum, especially given how easily they may be conveyed electronically. *Picker Int'l., Inc. v. Travelers Indem. Co.*, 35 F.Supp.2d 570, 574 (N.D. Ohio 1998). Regent, therefore, does not sufficiently demonstrate how the Southern District of Iowa would be a more convenient forum.

-8-

Regent also neglects to raise public interest concerns that might weigh in favor of transfer. *See Moses*, 929 F.2d at 1137. In arguing for abstention, however, Regent implicates the integrity of the judicial system by suggesting that this litigation is duplicative of the pending subrogation suit. The court disagrees. Regent's assertion that both cases will require the same witnesses and decide similar issues is largely unsupported; Regent does nothing to challenge Mt. Hawley's claim that the case involves only the notice requirements of the indemnification agreement and therefore is independent of the Iowa suit.

Regent also cites choice of law as a factor weighing in favor of litigating this case in Iowa. Choice of law is typically invoked *against* a decision to transfer. *See Van Dusen*, 376 U.S. at 637-39. Indeed, in the instant case, the district court originally selected by the plaintiff may be more familiar with the applicable law than a district court sitting in a different state. *See Picker*, 35 F.Supp.2d at 574. Given jurisdiction, Ohio conflict of law rules govern choice of law here, and Ohio law will govern the interpretation of the indemnification agreement's notice requirement, further demonstrating that public interests will be best served by litigating this case in Ohio. *See Klaxon v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496-97 (1941); *Nationwide Mut. Ins. Co. v. Ferrin*, 21 Ohio St. 3d 43, 44-45 (1986).

Because Regent failed to meet its burden of demonstrating that the interests of the parties and the public weigh in favor of a motion to transfer, such a motion is denied.

**D**. **Abstention**

   **1. Discretionary Abstention**

The Declaratory Judgment Act gives federal courts discretion to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(2006). In general, the decision to exercise jurisdiction over a declaratory judgment action depends on whether the declaratory relief requested "'will serve a useful purpose in clarifying and settling the legal relationships in issue' and whether it 'will terminate and afford relief

-9-

from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Aetna*, 74 F.3d at 687 (quoting *Grand Trunk W. R.R. Co.* v. *Consolidated Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984)). The court, therefore, considers the following factors:

> (1) whether the judgment would settle the controversy; (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata"; (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach on state jurisdiction; and (5) whether there is an alternative remedy that is better or more effective.

*Grand Trunk* 746 F.2d at 326 (citation omitted).

Each of the *Grand Trunk* factors indicates that the court's exercise of jurisdiction is appropriate. First, as the issues of whether Packers met the notice requirements of the indemnification agreement, and whether Mt. Hawley suffered any prejudice as a result, have not been raised in another court, a declaratory judgment will settle them, once and for all. Second, because it will construe the indemnification agreement and Mt. Hawley's duties under it as they relate to the fire at the Iowa Turkey plant, a declaratory judgment action will, in fact, clarify the legal relations at issue. *Id.* Third, this action does not seem to be an act of "procedural fencing" as it brings suit against one defendant in its home forum rather than beyond it, and it cannot be a "race for res judicata" because the issues it raises are not before another court. *Id.* Fourth, because this declaratory judgment action would, if anything, involve the comity that one district court owes to another and not a conflict between state and federal courts, it does not encroach on state jurisdiction. *Id.* And fifth, because an indemnification action after the resolution of the underlying suit is likely to be less effective, this declaratory judgment action is a suitable remedy. *Id*.

Regent incorrectly contends that Sixth Circuit precedent dictates that "declaratory judgments

seeking advance opinions on indemnity issues. . . ," like this case, "should normally be filed, if at all, in the court that has jurisdiction over the litigation which gives rise to the indemnity problem." *See* 746 F.2d at 326; *Bituminous Cas. Corp. v. J&L Lumber Co.*, 373 F.3d 807, 812 (6th Cir. 2004). Regent, however, omits key language qualifying the Sixth Circuit's position: "This is not to say that there is a per se rule against exercising jurisdiction in actions involving insurance coverage questions." *Id.* at 812-13. Thus, because Sixth Circuit case law indicates that declaratory judgment actions may be appropriate for the determination of indemnity issues, and because the indemnification issues raised in this case satisfy each of the five *Grand Trunk* considerations, the court's exercise of its jurisdiction is appropriate and Regent's request for abstention is denied.

### 2. The Colorado River Abstention Doctrine

Finally, Regent requests abstention under the *Colorado River* Doctrine. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). Because this case is not duplicative of the subrogation suit in Iowa, this request must be denied.

The *Colorado River* Abstention Doctrine is invoked to avoid parallel litigations and promote judicial economy. *Id.* Applied most frequently to potentially duplicative actions simultaneously pending in state and federal court, this doctrine represents "an extraordinary and narrow exception to the duty of a district court to adjudicate a controversy properly before it." *Id.* at 814. When parallel federal actions are pending, notions of comity favor the forum of the action which was first filed. *Id.* at 817; *Smith v. S.E.C.,* 129 F.3d 356, 361 (6th Cir. 1997). Under this so-called "first-filed" rule, a court must first establish whether the second suit is in fact duplicative. "The one must be materially on all fours with the other. . . . The issues must have such an identity that a determination in one action leaves little or nothing to be determined in the other." *Id.* (citation omitted). If the second suit is duplicative, the court may exercise its discretion:  (1) to stay the suit before it; (2) to allow both suits to proceed;

or (3) in some circumstances, to enjoin the parties from proceeding in the other suit. *Smith*, 129 F.3d at 361.

As the court has already noted, Regent has failed to make any specific assertions that sufficiently explain how the issues raised by the Iowa suit parallel or even implicate the issues raised in this declaratory judgment action. The Iowa suit concerns the contract between Packers and Iowa Turkey, and Packers' alleged negligent execution of its contractually mandated duties and its potential liability for a fire; this case, on the other hand, concerns an indemnification agreement between Packers and Mt. Hawley and Packers' alleged failure to properly notify Mt. Hawley about a claim arising from the fire. The only clear nexus between these matters is the fire itself; to have succeeded in suggesting that they were parallel, Regent would have needed to direct the court to a nexus between the issue of Packers' potential negligence in causing the fire and Packers' alleged violation of the notice requirements of the indemnification agreement with Mt. Hawley. Because no such nexus is evident, abstention under the *Colorado River* Doctrine is unwarranted.

### III. Conclusion

For the aforementioned reasons, Regent's motion to dismiss is denied, as are its requests for transfer and abstention.

IT IS SO ORDERED.         /s/ Ann Aldrich
                          ANN ALDRICH
                          UNITED STATES DISTRICT JUDGE
Dated:  June 22, 2007